UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JAN 1 5 2020
CLERK, U.S. DISTRICT COURT.
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

| | |
|---|---|
| BLANCA MARISELA GALLEGOS REYES, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF FERNANDO ESPINO DELGADO AND AS NEXT FRIEND OF CRISTOFER DE JESUS ESPINO GALLEGOS, A MINOR, JESUS ESPINO SIFUENTES, AND CONSUELO DELGADO BRIONES,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA AND DIMMIT COUNTY, TEXAS AND JORGE LUIS MONSIVAIS, JR.,<br><br>*Defendants*. | Civil No. 5:19-CV-00902-OLG |

## MEMORANDUM AND ORDER

Before the Court is Defendant United States of America's ("United States" or "Movant") Motion to Dismiss (the "Motion"). Docket no. 13. For the reasons explained below, the Motion is GRANTED.

### BACKGROUND

On June 17, 2018, United States Border Patrol agents ("BPA") and the Dimmit County Sheriff's Office ("Dimmit County") initiated a traffic stop of a vehicle traveling in Dimmit County, Texas. Docket no. 1 ¶¶ 13–14. After the driver, Jorge Luis Monsivais Jr. ("Monsivais"), failed to stop, BPA and Dimmit County pursued the vehicle down Highway 85 at an alleged speed of more than 100 miles per hour. Docket no. 1 ¶¶ 14–15. At approximately 11:13 AM, Monsivais's vehicle

1

crashed, ejecting twelve passengers including Fernando Espino Delgado ("Delgado"). Docket no. 1 ¶ 15. Delgado was fatally injured and died at the scene. Docket no. 1 ¶ 16.

On October 30, 2018, Plaintiffs—Delgado's wife, son, and parents—each filed a Standard Claim Form 95 with United States Customs and Border Protection ("CBP") pursuant to 28 U.S.C. § 2675. Docket no. 1 ¶ 9. Plaintiffs claimed damages against the United States for the wrongful death of Delgado on behalf of themselves and the Delgado estate. Docket no. 14-2. On February 13, 2019, Plaintiffs received notice from CBP that their claims had been denied. Docket no. 14-3. Plaintiffs then filed this suit against the United States,[1] Dimmit County, and Monsivais (collectively, "Defendants") on July 27, 2019. Docket no. 1. Plaintiffs' Complaint asserts claims of damages on behalf of themselves and the Delgado estate. *See id.* Plaintiffs allege that their damages are the result of negligent behavior by Defendants, including an alleged "counter evasive maneuver" by Dimmit County that Plaintiffs assert impacted Monsivais's vehicle causing it to flip over and eject Delgado. Docket no. 1 ¶¶ 16, 25, 28, 31.

Defendant United States has moved to dismiss Plaintiffs' claims on three grounds. First, pursuant to Fed. R. Civ. P. 12(b)(1), Movant argues that the Court lacks subject matter jurisdiction over Plaintiffs' claims against the United States because the "discretionary function" exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, preserves sovereign immunity with respect to those claims. Docket no. 13 at 6–9. Second, pursuant to Fed. R. Civ. P. 12(b)(6), Movant argues that Plaintiffs failed to state a claim upon which relief can be granted. Docket no. 13 at 10–11. Finally, Movant argues that Plaintiffs did not properly comply with the requirements

---

[1] The United States of America is the proper defendant when a federal officer, such as the United States Border Patrol agent, is the subject of a suit for actions taken within the scope of his or her employment. 28 U.S.C. § 2679(d)(2).

for filing a claim against the federal government for money damages pursuant to 28 U.S.C. § 2675(a). Docket no. 13 at 9–10.

Because the Court concludes that Movant's first argument mandates dismissal of Plaintiffs' claims against the United States, only that argument is addressed in detail below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party can move for dismissal where the Court lacks subject matter jurisdiction over the case, including where the plaintiff's claims are barred by sovereign immunity. *See Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). "The party asserting jurisdiction has the burden of proof." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 654 (5th Cir. 2012). Dismissal under Fed. R. Civ. P. 12(b)(1) is only appropriate where it "appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).[2]

## DISCUSSION

### I. The FTCA and the Discretionary Function Exception

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Federal Tort Claims Act offers one instance of this consent, waiving the United States' sovereign immunity and granting private parties subject matter jurisdiction to bring suit when a federal employee commits a tort while acting within the scope of his or her employment. *See* 28 U.S.C. § 2674. However, under the FTCA's discretionary function exception, sovereign immunity is not waived—and a party lacks subject matter jurisdiction to sue the federal government—when

---

[2] Because this Order only addresses the Court's lack of subject matter jurisdiction, this Order does not discuss the legal standard for a motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6).

3

a claim arises from a government employee's performance of a discretionary function or duty on behalf of a federal agency. 28 U.S.C. § 2680(a).

To fall within the exception, the act that led to the injury must satisfy a two-factor test. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The first factor examines whether the act was mandated by a statute, regulation, or policy. *See id.* If an employee's behavior is required, "there will be no shelter from liability because there is no room for choice." *United States v. Gaubert*, 499 U.S. 315, 324 (1991). The second factor considers whether the tortious act implicates a social, economic, or political policy consideration. *See Berkovitz*, 486 U.S. at 537. To satisfy this factor, there need not be an evaluation of the subjective intent of the government employee at the time that the tortious activity occurred. *See Gaubert*, 499 U.S. at 325. Instead, the exception covers any discretionary decision that is "susceptible" to policy analysis. *Id.*

## II. Applicability of the Discretionary Function Exception to Plaintiffs' Claims

To apply the two-part discretionary function exception test, the Court must begin by defining the conduct at issue. *See Gonzalez v. United States*, 851 F.3d 538, 545 (5th Cir. 2017). Here, the relevant inquiry is whether the applicable CBP policies required BPA to initiate and continue pursuit of Monsivais's vehicle in a specific manner. Upon review of the relevant guidelines, the Court finds that they did not.

Beginning with the first factor, Plaintiffs have failed to establish that BPA's pursuit of the fleeing vehicle violated any nondiscretionary Border Patrol policy. In fact, the CBP Emergency Driving and Vehicular Pursuit Directive (the "Directive") that both the United States and Plaintiffs reference explicitly contemplates an element of choice as to how BPA should engage in emergency driving and pursuit. Docket no. 13 at 12–13; Docket no. 15 at 3–4. For example, Paragraph 2.1 of the Directive states that CBP Officers ("CBPO") and BPA:

4

may engage in and continue emergency driving, including vehicle pursuit, only when they determine, and only for the duration of that ongoing determination, that the law enforcement benefit of emergency driving outweighs the immediate danger created by such emergency driving. To continue emergency driving, a CBPO and/or BPA must continually consider and evaluate critical safety issues and balance the law enforcement need for emergency driving against the immediate and potential danger posed to the general public by the continuation of such emergency driving.

Docket no. 13-1 at § 2.1 (containing CBP Directive No. 4510-25 dated March 26, 2008). The Directive further offers "factors to be considered in making pursuit determinations," including "danger to the public presented by the suspect(s) remaining at large" and "immediate danger to the public of continuing the emergency driving or vehicle pursuit." *Id.* at § 2.2

The Directive does not lay out a mandatory course of behavior by, for example, prescribing speed limits during a pursuit. Rather, the regulation provides relevant considerations that officers must weigh and "balance," presumably based on their training and judgement. "[B]ecause the 'policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary.'" *Gonzalez*, 851 F.3d at 546 (quoting *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010)).[3] Accordingly, the Court concludes that the first factor of the applicable standard is satisfied in this case.

The challenged behavior also satisfies the second factor of the discretionary function exception test. Here, the relevant inquiry is not whether the agents in fact engaged in a policy analysis during their pursuit, but rather whether their decision was "susceptible to policy analysis." *Tsolmon v. United States*, Civil Action No. H-13-3434, 2015 WL 5093412, at *10 (S.D. Tex. Aug.

---

[3] Plaintiffs allege that BPA violated a mandatory policy by (1) disregarding the danger of pursuing a vehicle with so many passengers and (2) continuing the pursuit after Dimmit County had taken over the operation. *See* Docket no. 14 at 13. If true, these allegations may demonstrate that BPA acted negligently. However, "the question of whether the government was negligent is irrelevant" to the discretionary function exception test. *Gonzalez*, 851 F.3d at 544 (citations omitted). Plaintiffs have failed to show, as they must, that existing regulations establish a course of mandatory behavior by CBP officials.

29, 2015), *aff'd*, 841 F.3d 378 (5th Cir. 2016) (quoting *Spotts*, 613 F.3d at 572). Regardless of BPA's subjective intent, "[d]ecisions concerning whether to initiate, continue, or terminate a pursuit implicate competing policies." *Herrera v. United States*, No. 09CV0756 JM(WMc), 2010 WL 4236974, at *4 (S.D. Cal. Oct. 21, 2010). Indeed, throughout the *entirety* of a pursuit, officers must continually balance their duty to enforce the law "against the safety concerns of the general public as well as minimizing economic losses and political concerns." *Id.*[4] Additionally, the Supreme Court has instructed that when "a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. Plaintiffs have failed to rebut this presumption, offering no reason why the considerations specifically outlined by the Directive would not be relevant here.[5] Accordingly, the Court concludes that the second factor of the applicable standard is satisfied.

---

[4] Plaintiffs cite *Denham v. United States*, 834 F.2d 518 (5th Cir. 1987) and *Wysinger v. United States*, 784 F.2d 1252 (5th Cir. 1986) in arguing that only an officer's initial decision to pursue a suspect, rather than the pursuit itself, falls within the discretionary function exception. Docket no. 14 at 8–10. However, those cases discussed circumstances in which the government made one "critical discretionary decision," and any subsequent conduct was "operational activity" that is merely intended to execute the initial decision. *Denham*, 834 F.2d at 520; *Wysinger*, 784 F.2d at 1254. Here, BPA's conduct during the pursuit was not merely "operational activity," as pursuing officers must continually weigh competing policy concerns rather than just routinely implement their initial decision to pursue a suspect.

[5] Plaintiffs' reliance on *Carcamo-Lopez v. Does 1 through 20*, 865 F. Supp. 2d 736 (W.D. Tex. 2011) is misplaced. *Carcamo-Lopez* concerned a negligence suit brought against a border patrol agent who moved an injured woman to his vehicle in order to provide her medical treatment. *See id.* at 744. The Court found that the decision did not implicate policy considerations because the agent "only had one issue to weigh, namely, Plaintiff's health." *Id.* at 758. The case at hand presents a very different circumstance because, as just described, BPA had to weigh the competing policy concerns that are outlined in the Directive and that are generally applicable in instances of vehicular pursuit.

To be clear, this Court recognizes that it "must exercise restraint when applying the discretionary function exception" or it risks insulating the government "from nearly all tort liability." *Johnson v. Sawyer*, 980 F.2d 1490, 1502 (5th Cir. 1992), *vacated on other grounds*, 47 F.3d 716 (5th Cir. 1995) (quoting *Collins v. United States*, 783 F.2d 1225, 1233 (5th Cir. 1986)). However, the tortious activity in this case does not emerge from the routine discretion required in day-to-day behavior, such as in the standard act of driving a car.[6] Rather, the accident at issue resulted from federal officers' decisions as to how to best enforce the law, an area that has long been understood to fall within the parameters of sovereign immunity. *See Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993) ("The overwhelming consensus of federal case law establishes that criminal law enforcement decisions—investigative and prosecutorial alike—are discretionary in nature and, therefore, by Congressional mandate, immune from judicial review."). Unsurprisingly, other federal courts that have encountered suits resulting from high-speed chases have overwhelmingly agreed that the government is shielded from liability under the FTCA's

---

[6] Contrary to Plaintiffs' contention, applying the discretionary function exception to the present case would not serve to immunize the government from all tort liability associated with car accidents. *See* Docket no. 14 at 9, 11. The Court recognizes that the Supreme Court has explicitly stated that the exception does not apply if a federal official merely drives an "automobile on a mission connected with his official duties and negligently collide[s] with another car." *Gaubert*, 499 U.S. at 325 n.7. However, in this case, BPA's driving was not merely "connected" to the officer's duties, but rather the pursuit was, in and of itself, the duty of the officer. While general driving operations cannot be "grounded in regulatory policy," an officer's efforts to apprehend a fleeing suspect can be and are grounded in such policy. *Id.*

discretionary function exception.[7] Texas state courts—in analyzing suits under the Texas Tort Claims Acts[8]—have also concluded that vehicular pursuit implicates an officer's discretion.[9]

Because both steps of the requisite test are satisfied, the discretionary function exception to the FTCA's waiver of sovereign immunity applies in this case. Accordingly, this Court lacks subject matter jurisdiction over Plaintiffs' claims against the United States, and the Motion must be granted to the extent it seeks dismissal of those claims pursuant to Fed. R. Civ. P. 12(b)(1).[10]

---

[7] *See Horta v. Sullivan*, 4 F.3d 2, 19 (1st Cir. 1993) (noting that a police officer's decision to engage in a high-speed car chase would fall within the FTCA's discretionary function exception if federal law governed that case); *Stearney v. United States*, No. CV-16-08060-PCT-DGC, 2018 WL 4407555, at *4 (D. Ariz. Sept. 17, 2018) (finding that an officer's decision to initiate and continue a high-speed chase fell within the FTCA's discretionary function exception); *Many v. United States*, No. 3:15-CV-03004-RAL, 2017 WL 2937596, at *5 (D.S.D. July 7, 2017) (same); *Herrera*, 2010 WL 4236974, at *4 (same).

[8] The Court notes that Dimmit County has asserted defenses under the Texas Tort Claims Act ("TTCA"). *See* Docket no. 11 at 3. However, this Court's holding with respect to the United States' sovereign immunity does not govern whether Dimmit County has "official immunity" under the TTCA or vice versa. Importantly, "federal law does not determine whether an officer's actions are discretionary for purposes of state law." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). Unlike the FTCA, immunity under the TTCA requires the government entity to establish that the officer was acting in "good faith" by showing that "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *Id.* at 656.

[9] *See, e.g., City of Pharr v. Ruiz*, 944 S.W.2d 709, 714 (Tex. App.—Corpus Christi, 1997, no writ) (finding that a police officer's initiation of a high-speed pursuit of a suspect was a discretionary decision); *Petta v. Rivera*, 923 S.W.2d 678, 684 (Tex. App.—Corpus Christi, 1996, writ denied) (same); *Harris Cty. v. Ochoa*, 881 S.W.2d 884, 887–88 (Tex. App.—Houston [14th Dist.], 1994, writ denied) ("Beyond the initial decision to engage in the chase, a high speed pursuit involves the officer's discretion on a number of levels, including which route should be followed, at what speed, should back-up be called, and how closely should the fleeing vehicle be pursued.").

[10] The Court notes that Plaintiffs' claims against the United States *may* be subject to dismissal on other bases, as the United States contends in its Motion. *See* Docket no. 13 at 9–11. However, because the Court has concluded that dismissal of Plaintiffs' claims against the United States is appropriate based on the applicability of the discretionary function exception, the Court need not specifically address Movant's other arguments.

## CONCLUSION

For the reasons set forth above, Defendant United States of America's Motion to Dismiss (Docket no. 13) is **GRANTED**, and Plaintiffs' claims against the United States of America are hereby **DISMISSED**.

It is so **ORDERED**.

**SIGNED** this 15 day of January, 2020.

_____
ORLANDO L. GARCIA
Chief United States District Judge